GBASAY ROGERSON, Plaintiff v. HUGH E. FITZPATRICK, ALTON R. TYNDALL, JR. AND LINDA S. BECK, JOINTLY, SEVERALLY AND INDIVIDUALLY IN THEIR OFFICIAL CAPACITIES AND THE CITY OF DURHAM, Defendants

No. COA94-898

(Filed 5 March 1996)

1. **Pleadings § 399 (NCI4th)— allegations against city and officers—amended complaint—no relation back to date of original complaint**

Plaintiff's claims against defendant city and defendant officers in their official capacities which were stated in his amended complaint did not relate back under N.C.G.S. § 1A-1, Rule 15(c) to the date of the filing of his original complaint against the officers in their individual capacities since that rule applies only to allow the addition of new claims and not further defendants.

**Am Jur 2d, Pleading §§ 68-124.**

2. **Limitations, Repose, and Laches § 92 (NCI4th)— complaint against city—discovery of city's failure properly to train officers—accrual of cause of action**

There was no merit to plaintiff's contention that the statute of limitations on his 42 U.S.C. § 1983 claim against defendant city based on his detention by police officers did not begin to run until his discovery of the city's failure to train its police officers properly, since plaintiff knew defendant officers were employed by the city; although plaintiff was first detained by a single policeman, two additional officers arrived at the scene and actively participated without objection in the alleged injury to plaintiff; the

ROGERSON v. FITZPATRICK

[121 N.C. App. 728 (1996)]

officers' concerted action suggested a consistent response by each to their training or lack thereof so as reasonably to place plaintiff on notice of any potential inadequacies therein; in addition, the trauma induced by the officers' actions as alleged by plaintiff was of such severity as reasonably to have motivated him to investigate the cause thereof; although plaintiff asserted that he did not immediately know the city was responsible for his injury, the federal courts have held that under the federal rule of accrual knowledge of the responsible party is not necessary to accrue a federal cause of action; and plaintiff included in his amended complaint no allegation setting forth the date he discovered information implicating the city nor a statement explaining the belated discovery.

**Am Jur 2d, Limitation of Actions §§ 31 et seq.**

Appeal by plaintiff from judgment entered 10 June 1994 by Judge Thomas W. Ross in Durham County Superior Court. Heard in the Court of Appeals 10 May 1995.

*Irving Joyner and Tracy Hicks Barley, for plaintiff appellant.*

*Faison & Fletcher, by Reginald B. Gillespie, Jr., and Keith D. Burns, for defendant appellees.*

JOHN, Judge.

Plaintiff Gbasay Rogerson appeals dismissal, for failure to file suit within the applicable statute of limitations period, of his claims against the City of Durham (the City) and Durham police officers Corporal Hugh Fitzpatrick (Fitzpatrick), Alton Tyndall, Jr. (Tyndall), and Linda Beck (Beck) in their official capacities.

Pertinent background information, as alleged in plaintiff's complaint, and procedural details are as follows: At approximately 11:30 p.m. on 17 February 1990, plaintiff was operating his automobile in Durham when he was signaled to stop by defendant Fitzpatrick. Plaintiff alleges Fitzpatrick, a white police officer, lacked probable cause to stop the vehicle and acted only because plaintiff was a black person driving an expensive-looking sports car.

Upon bringing his automobile to a stop, plaintiff was directed by Fitzpatrick to display his driver's license and automobile registration. As plaintiff attempted to locate the registration, he was ordered by Fitzpatrick to exit the vehicle and subsequently searched without

probable cause or his consent. Thereafter, plaintiff was forced to sit in a patrol car while Fitzpatrick and two other white police officers who had arrived at the scene, defendants Tyndall and Beck, searched plaintiff's automobile in a violent manner. Further, the officers verbally abused plaintiff and shined a high-powered flashlight into his eyes. Plaintiff alleges citations issued him for operating a vehicle with improper or expired license registration and failure to maintain liability insurance were subsequently dismissed; however, defendants respond that plaintiff was convicted of driving with expired registration.

Plaintiff filed suit 6 March 1991 in the Superior Court of Durham County against Fitzpatrick, Tyndall, and Beck, in their individual capacities, pursuant to: 1) 42 U.S.C. § 1983, for violation of plaintiff's Fourth Amendment rights against unreasonable search and seizure and his Fourteenth Amendment rights to due process and equal protection of the law; 2) Article I, § 19 of the North Carolina Constitution, for violation of state constitutional provisions parallel to the Fourth and Fourteenth Amendments; 3) 42 U.S.C. § 1985(3), for conspiracy to harm plaintiff based upon his race; and 4) North Carolina common law, for conspiracy to commit unlawful acts.

Defendants filed answer on 6 May 1991, denying the essential allegations of plaintiff's complaint and asserting they at all times "acted lawfully under color of law pursuant to the laws of the State of North Carolina and the ordinances and regulations of the City of Durham." Plaintiff pursued discovery, and defendants' "Objections and Responses to Plaintiff's First Request for Admissions" and "Objections and Answers to Plaintiff's First Set of Interrogatories and Request for the Production of Documents" were filed 1 May 1992 and on or about 5 May 1992, respectively.

Thereafter, on 5 March 1993, plaintiff filed a motion to amend his complaint to add a claim against the City pursuant to 42 U.S.C. § 1983 [§ 1983] and to name as defendants the officers in their official capacities. On 26 April 1993, the Honorable George R. Greene entered a consent order allowing the amended complaint to be filed "without prejudice to any and all denials, avoidances, and defenses which Defendants" might assert, including those under N.C.R. Civ. P. 12(b). Defendants' answer to the amended complaint, filed 1 July 1993, included the City's motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(6) for failure to state a claim, alleging the action against the City was not filed within the applicable statute of limitations period.

**ROGERSON v. FITZPATRICK**

[121 N.C. App. 728 (1996)]

Following a hearing on the motion held 11 May 1994, judgment was entered by the trial court 10 June 1994 dismissing plaintiff's claims against the City and the officers in their official capacities. The court certified its Order and Judgment for immediate appeal pursuant to N.C.R. Civ. P. 54(b).

We note initially that the trial court's order dismissing plaintiff's claims provided it had considered and examined "the court file, including [defendants'] motion, pleadings, *discovery*, . . . [and] the arguments of counsel." (emphasis added). While defendants' motion was filed pursuant to Rule 12(b)(6), such a "motion to dismiss for failure to state a claim is 'converted to a Rule 56 motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court.'" *King v. Cape Fear Mem. Hosp.*, 96 N.C. App. 338, 342, 385 S.E.2d 812, 814-815 (1989), *disc. review denied*, 326 N.C. 265, 389 S.E.2d 114 (1990) (citations omitted); N.C.G.S. § 1A-1, Rule 12(b) (1990). We therefore treat the trial court's order as one allowing summary judgment against plaintiff.

Plaintiff sets forth two arguments that the claims set forth in his amended complaint are not barred by the statute of limitations. First, he contends the amended complaint relates back to his first complaint as permitted by N.C.R. Civ. P. 15(c) [Rule 15(c)] and thus assumes the filing date of the former. Second, he asserts his claim against the City accrued at some point after the night he was detained, *i.e.*, when he learned the officers' actions were due to the City's failure to train its police force properly. We address each of plaintiff's contentions in turn.

[1] Regarding plaintiff's first argument, we observe that plaintiff's motion to amend was not filed until 5 March 1993, more than three years following his detention by defendant officers. *See Mauney v. Morris*, 316 N.C. 67, 71, 340 S.E. 2d 397, 400 (1986) (date motion to amend filed as opposed to date court rules upon it crucial date in measuring limitations period). The statute of limitations period for § 1983 actions in North Carolina being three years, *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied*, 444 U.S. 842, 62 L. Ed. 2d 54 (1979), plaintiff's claim would appear to be barred by the statute of limitations.

However, plaintiff relies on Rule 15(c) in maintaining that his claims against additional defendants the City and the officers in their official capacities "relate back" and are deemed to take on the filing date of his original complaint. Rule 15(c) provides as follows:

ROGERSON v. FITZPATRICK

[121 N.C. App. 728 (1996)]

A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

Contrary to plaintiff's position, however, our Supreme Court recently held that under the plain meaning of the statute referring to "claim[s]" and not parties, Rule 15(c) applies only to allow the addition of new claims and not further defendants. *Crossman v. Moore*, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995). It is elementary that this Court is bound by holdings of the Supreme Court. *Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (1992), *rev'd on other grounds*, 334 N.C. 115, 431 S.E.2d 178 (1993).

Moreover, plaintiff, citing *Kentucky v. Graham*, 473 U.S. 159, 165-166, 87 L. Ed. 2d 114, 121 (1985), admitted below in his "Motion to Amend and Memorandum in Support of Motion to Amend" that official-capacity suits

generally represent only another way of pleading an action against the entity of which an officer is an agent. . . . Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the governmental entity itself.

Plaintiff's official capacity claims against the officers are thus in essence simply alternative claims against the City.

Because *Crossman* prohibits the addition of new defendants under Rule 15(c), plaintiff's claims against the City and the officers in their official capacities may not take on the filing date of his original complaint and therefore are not saved under his first argument.

[2] We next consider plaintiff's contention that the statute of limitations on his complaint against the City did not begin to run until his discovery of the City's failure to train its officers properly.

Under § 1983, a city may not be held liable for the actions of its employees pursuant to a *respondeat superior* theory of liability, but is responsible only when the city *itself* causes the constitutional violation at issue. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 636 (1978). One such instance results when a city manifests deliberate indifference to the inadequacy of the

training of its police officers. *Canton v. Harris*, 489 U.S. 378, 103 L. Ed. 2d 412 (1989).

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390, 103 L. Ed. 2d at 427-428.

Plaintiff asserts in his brief that he initially believed the occasion on which he was detained constituted "an isolated incident carried out by three police officers acting with racial animus," and that the City thus was not liable for their actions under § 1983. However, plaintiff contends he later "discovered" the officers' behavior was a consequence of the City's failure to train them in an adequate manner. Plaintiff argues the statute of limitations on his claim against the City did not accrue until he discovered this responsibility of the City for the officers' actions.

While state law determines the statute of limitations period for § 1983 claims, federal law controls the date of accrual of a cause of action under § 1983. *Bireline*, 567 F.2d at 263. The federal courts have enunciated a "discovery rule," also called the "due diligence rule" or the doctrine of "blameless ignorance," priniciply in cases where the injury does not manifest itself for some time after the alleged negligent act or in instances involving intentional or fraudulent concealment of the defendant's responsibility. *Leftridge v. United States*, 612 F. Supp. 631, 633-634 (W.D. Mo. 1985). Under this rule, the statute of limitations for a cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action," *Bireline*, 567 F.2d at 263, or when "plaintiff knows or reasonably should have known of both the existence and the cause of his injury," *Leftridge*, 612 F. Supp. at 633. However, a plaintiff is required to act with "due diligence" in discovering the facts underlying his or her cause of action. *See Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir.), *cert. denied*, 464 U.S. 916, 78 L. Ed. 2d 258 (1983).

Plaintiff cites *Young v. Clinchfield Railroad Co.*, 288 F.2d 499 (4th Cir. 1961), as authority for his contention that application of the

discovery rule sets accrual of the statute of limitations on his claim against the City at the time he became aware of deficiencies in its training of police officers. In *Young*, the personal injury claim of a man who developed silicosis after years of breathing silica dust in the course of his employment was held to have accrued not on the date Young contracted silicosis, but rather when he discovered the presence of the disease, which typically incubates for years without the knowledge of the afflicted individual. *Id.* at 502-503.

We find *Young* inapposite to the case *sub judice*. *Young* involved a type of claim to which the federal courts have commonly addressed the discovery rule—that of a victim whose injury does not manifest itself for some time after it first comes into existence. *See Leftridge*, 612 F. Supp. at 634; *see also Urie v. Thompson*, 337 U.S. 163, 170, 93 L. Ed. 1282, 1292 (1949) (cause of action of plaintiff who had contracted silicosis resulting from thirty year period of silica dust inhalation did not accrue, because of plaintiff's "blameless ignorance" of his injury, until the disease manifested itself). By contrast, numerous circumstances herein favor a determination that plaintiff had sufficient knowledge on 17 February 1990, the night he was detained, such that in the exercise of due diligence he could have determined both the fact of his injury and the cause thereof. *See Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) ("[A] plaintiff need not have actual knowledge [of the facts to support a particular claim] if the circumstances would lead a reasonable person to investigate further.").

First, it is uncontroverted that plaintiff knew defendant officers were employed by the City. Indeed, his original complaint includes such an allegation and makes reference to the patrol cars being "owed [sic] and maintained by the [C]ity" and to the officers wearing "an official uniform, weapon, badge, and insignia of the police department of the [C]ity." *Cf. Wilkinson v. United States*, 677 F.2d 998, 1002 (4th Cir.), *cert denied*, 459 U.S. 906, 74 L. Ed. 2d 167 (1982) (plaintiff involved in collision with sailor operating rental automobile "was possessed of sufficient knowledge to put [plaintiff] on inquiry as to whether [the sailor], a naval rating on active service, was operating within the scope of his employment," so as to implicate government as defendant); *Henderson v. United States*, 785 F.2d 121, 126 (4th Cir. 1986) (accident report, filed at time of plaintiff's automobile collision with vehicle operated by substitute United States mail carrier, which indicated carrier's vehicle was "being used by the government," held to constitute "sufficient notice to prompt [plaintiffs] to explore the

ROGERSON v. FITZPATRICK

[121 N.C. App. 728 (1996)]

legal ramifications of the government's involvement," and claim accrued on date of collision).

Second, although plaintiff was first detained by a single policeman, two additional officers arrived at the scene and actively participated without objection in the alleged injury to plaintiff. Their concerted action suggests a consistent response by each to their training or lack thereof so as reasonably to place plaintiff on notice of any potential inadequacies therein. In addition, the trauma induced by the officers' actions as alleged by plaintiff was of such severity as reasonably to have motivated him to investigate the cause thereof. *See Kumpfer v. Shiley, Inc.*, 741 F. Supp. 738, 740 (N.D. Ill.) ("decedent's cardiac arrest was sufficiently sudden and traumatic to prompt the plaintiff to make some inquiry as to the cause of death," applying Illinois law).

Third, although plaintiff asserts he did not immediately know the City was responsible for his injury, individual federal courts have held that "[u]nder the federal rule of accrual, . . . knowledge of the responsible party is not necessary to accrue a federal cause of action." *Continental Ins. Co. v. Pierce County, Wash.*, 690 F. Supp. 930, 933 (W.D. Wash. 1987), *aff'd without opinion*, 877 F.2d 64 (9th Cir. 1989). " '[T]he "cause" [of an injury] is known when the immediate physical cause of the injury is discovered,' " and " 'it is [a] plaintiff's burden, within the statutory period, to determine whether and whom to sue.' " *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054, 93 L. Ed. 2d 979 (1987) (citations omitted) (plaintiffs' cause of action against federal agents based upon burning of plaintiffs' garage accrued when they learned of "the fact of their injury, *i.e.*, the destruction of [their] property, and its cause, fire."); *but see Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992), *cert. denied*, —— U.S. ——, 121 L. Ed. 2d 35 (1992) (plaintiff must be in possession of two facts: "(1) an injury has occurred; and (2) the identity of the person who inflicted the injury" before limitations period accrues). Plaintiff knew on 17 February 1990 the fact of his alleged injury, deprivation of his constitutional rights, as well as its immediate physical cause, the conduct of defendant police officers.

Next, plaintiff included in his amended complaint no allegation setting forth the date he discovered information implicating the City nor a statement explaining the belated discovery. Further, no affidavit (plaintiff's amended complaint is unverified) or other document of

record presented to the trial court contained such representations. Hence, plaintiff failed to come forward with a showing refuting defendants' reliance on the statute of limitations. *See Silver v. Board of Transportation*, 47 N.C. App. 261, 266, 267 S.E.2d 49, 54 (1980) (once statute of limitations pleaded, burden on plaintiff to show action brought within applicable period).

In addition, plaintiff advances certain factual assertions to this Court in his appellate brief which may be considered critically. *See Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890 (1979) ("Statements of fact made in briefs, and legitimate inferences therefrom, may be assumed as true as against the party asserting them."). Of course, such statements are not evidence for summary judgment purposes as against the non-asserting party.

Plaintiff states that

[a]fter the defendants responded to the initial complaint filed in this case, Dr. Rogerson discovered from the defendants' answer that the City of Durham was also responsible for the wrongful search and seizure to which he was subjected on February 17, 1990.

Elsewhere in his brief, plaintiff explains the manner in which defendants' initial answer put him on notice of a claim against the City:

In the original defendants' initial answer to the plaintiff's complaint which was filed on May 6, 1991, it was asserted that the defendants "were duly appointed police officers of the City of Durham, North Carolina, acting within the course and scope of their employment as police officers." In that answer, the defendants also admitted that they were acting "under color of law pursuant to the laws of the State of North Carolina and the ordinances and regulations of the City of Durham." The defendants repeatedly alleged that their conduct in stopping, detaining and searching the plaintiff was consistent with "standard police procedure" or "standard operating procedure." Thus, the issue of the liability of the City of Durham through its development of standard operating procedures and training was raised by the defendants.

Even disregarding *Fowler* and considering the foregoing in the light most favorable to plaintiff for purposes of summary judgment,

**ROGERSON v. FITZPATRICK**

[121 N.C. App. 728 (1996)]

*Hinson v. Hinson,* 80 N.C. App. 561, 563, 343 S.E.2d 266, 268 (1986), the boilerplate language in defendants' answer relied upon by plaintiff simply does not represent "discovered" information, unavailable through due diligence, such as to toll accrual of the statute of limitations of a claim against the City for inadequate training of law enforcement officers. The officers' denials of all essential allegations of plaintiff's complaint and their insistence that they at all times acted in accordance with "standard police procedure" were without question readily available to plaintiff, acting with due diligence in investigating his potential claim. *See Brumbaugh v. Princeton Partners,* 985 F.2d 157, 162 (4th Cir. 1993) (court may determine as matter of law plaintiff's failure to exercise due diligence in uncovering claim).

Moreover, the following allegation in plaintiff's original complaint belies his assertion that the City's answer was the first manifestation of the City's involvement:

> Each and all acts of the Defendants alleged herein were done by Defendants under the color and pretense of the . . . regulations, customs, and usages of . . . the City of Durham . . . .

Despite this indication of plaintiff's awareness that the individual defendants were subject to "customs and usages" of the City, including training programs or the lack thereof, *see Jordan by Jordan v. Jackson,* 15 F.3rd 333, 341 (4th Cir. 1994) (municipality's failure to train employees may constitute "policy or custom" actionable under § 1983), plaintiff declined to name the City as a defendant or to sue the officers in their official capacities. *Cf. Keller v. Prince George's County,* 923 F.2d 30, 34 (4th Cir. 1991) (defendants not sued in individual capacities "could reasonably assume . . . [plaintiff] had made a conscious decision to proceed solely against [government agency]").

We also observe that plaintiff neither alleged in his amended complaint nor argues to this Court that the officers failed to be forthcoming in their reliance upon "standard police procedure" or that the City engaged in deception or delay to prevent plaintiff from discovering facts which might lead to imposition of § 1983 liability upon the City. *See Stallings v. Gunter,* 99 N.C. App. 710, 716, 394 S.E.2d 212, 216, *disc. review denied,* 327 N.C. 638, 399 S.E.2d 125 (1990) (fraudulent concealment may "operate to toll the running of the statute of limitations after the action has accrued"); *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 69 N.C. App. 505, 509, 317 S.E.2d 41, 44 (1984), *aff'd,* 313 N.C. 488, 329 S.E.2d 350 (1985) (defendant may be equitably estopped

from raising statute of limitations when plaintiff's late filing "has been induced by acts, representations, or conduct" of defendant); *see also Leftridge*, 612 F. Supp. at 634. Hence, the statute of limitations period controlling plaintiff's claim may not be tolled under such theories.

Finally, the United States Court of Appeals for the Fourth Circuit, citing *City of Canton v. Harris*, 489 U.S. 378, 391, 103 L. Ed. 2d 412, 428 (1989), noted in *Gordon v. Kidd*, 971 F.2d 1087, 1097 (4th Cir. 1992), that a plaintiff, suing a local government or officials thereof in their official capacities for allegedly inadequate policies and training, must

identify a deficiency in a training program closely related to the injury complained of and must further show that the injury would have been avoided "under a program that was not deficient in the identified respect."

Even viewing all material of record, including plaintiff's amended complaint, in the light most favorable to plaintiff, we discern no indication he has met the requirements of *Gordon* in a manner sufficient to survive summary judgment.

Prior to concluding, we note in passing that defendants' answer, which plaintiff insists prompted his discovery of the City's failure to train the officers properly, was dated 6 May 1991. Yet plaintiff's motion to amend his complaint was not filed until 5 March 1993, nearly two years later. Accepting *arguendo* 6 May 1991 as the point at which plaintiff "had reason to know" of deficiencies in the City's training of its officers, plaintiff's lengthy delay in seeking amendment of his complaint is cause for concern. *See Gunter v. Anders*, 115 N.C. App. 331, 334, 444 S.E.2d 685, 687 (1994), *disc. review denied*, 339 N.C. 612, 454 S.E.2d 250 (1995) (no abuse of discretion to deny motion to amend complaint seeking to allege local board of education's purchase of liability insurance where plaintiffs knew of purchase nearly two and one-half years prior to hearing and did not seek amendment until defendants moved to dismiss based upon plaintiffs' failure to so plead).

In sum, because plaintiff's amended complaint does not relate back to the filing date of his original complaint, and because, under the facts and circumstances of the case *sub judice*, plaintiff knew or reasonably should have known of facts sufficient to put him on notice of alleged deficiencies in Durham police officer training on 17

SULTAN v. STATE BD. OF EXAMINERS OF PRACTICING PSYCHOLOGISTS

[121 N.C. App. 739 (1996)]

February 1990, the § 1983 claims in plaintiff's 5 March 1993 amended complaint against the City and against Fitzpatrick, Tyndall and Beck in their official capacities were barred by the three year statute of limitations, *Bireline*, 567 F.2d at 263, and were properly dismissed by the trial court.

Affirmed.

Judges COZORT and WALKER concur.