[Nos. 20020–8–I; 21396–2–I. Division One. March 20, 1989.]

GERALD A. BUSENIUS, *Respondent,* v. RITCHIE A. HORAN, ET AL, *Appellants.*

RITCHIE A. HORAN, ET AL, *Appellants,* v. GERALD A. BUSENIUS, *Respondent.*

---

*Ernest B. Vogel* and *Stead, Vogel & Eide,* for appellants.
*Stephen H. Demarest,* for respondent.

SCHOLFIELD, J.—The defendant, Ritchie A. Horan, appeals from the trial court's summary judgment order dismissing his action against Busenius and ordering payment of the entire real estate contract balance, and from the trial court's "Order Clarifying Summary Judgment Order" that was entered on motion made following Horan's filing of notice of appeal and supersedeas bond on the summary judgment and which ordered forfeiture of Horan's interest in the real estate contract. We reverse.

## FACTS

On December 15, 1978, Gerald A. Busenius executed a real estate contract with Ritchie and Susan Horan, husband and wife, in which Busenius sold to Horan the real property and· assets of an auto towing, wrecking, and storage business. Prior to and at the time of sale, Busenius allegedly represented to Horan that the property and improvements

upon the property, including a mobile home, were not in violation of any building or zoning codes. According to Horan, use of the property for an auto towing, wrecking, and storage business was at the time of sale, and still is, a nonconforming use under the King County Code that was grandfathered in without any need for special permit or authorization. The record reflects that in order to be non-conforming use, the mobile home would have had to be located on the property prior to 1958, the year in which the King County zoning code was adopted. Any structural changes, additions, or improvements to the property which occurred after 1958 would require permits as required by the King County zoning code. No such permits had been issued.

Sometime during the second half of 1981, Horan received at least two letters from the King County Department of Planning and Community Development notifying him that the mobile home located on the business property violated the King County Code. The mobile home and its utilities were on the property at the time of purchase by Horan in 1978. Confusion exists as to the date of the first letter received by Horan from the department. A sworn affidavit by the person who wrote the letters states that letters were sent to Horan on August 13, 1981, and December 3, 1981. However, the letters attached to this affidavit are dated November 5, 1981, and December 3, 1981. Horan claims that he responded to these notices by "advis[ing] the Department verbally that the mobile home was a 'grand-fathered non–conforming use and properly on the premises and, thus, not in violation." Horan states that he next heard from the department on December 18, 1982, when he received an abatement order regarding the mobile home. Horan appealed the order, and on October 14, 1983, the order was upheld by the county hearing examiner.

Busenius states in his affidavit that Horan did not make any payments on the contract after July 1985. At this time, the balance owned by Horan was approximately $70,300. In September 1985, Busenius served Horan with a notice of

intent to declare a forfeiture. Busenius served Horan with a declaration of forfeiture and cancellation of contract in October of 1985. In November 1985, Busenius filed a quiet title action against Horan, and in December 1985, Horan commenced a separate action against Busenius, alleging breach of contract, negligent misrepresentation, and common law fraud. The two lawsuits were consolidated by court order in February 1986. Subsequently, Busenius moved for summary judgment. On January 29, 1987, the trial court entered an order granting the motion and dismissing Horan's causes of action as having been barred by the statute of limitations. In dismissing Horan's causes of action, the court found that the statute of limitations had begun to run when Horan received the August 13, 1981, letter from the Department of Planning and Community Development. In addition, the order granting the motion for summary judgment provided that Horan "should be allowed . . . 90 days from entry of this Judgment . . . to pay the entire contract balance . . ." In a subsequent paragraph of the order, the court went on to provide that Horan "shall have until the 28th day of April, 1987, to pay the entire contract balance . . ." Notice of appeal seeking review of the summary judgment was timely filed by Horan on February 26, 1987. Horan also claims that he timely filed a supersedeas bond with this appeal. Although no proof of supersedeas bond appears in the record, Busenius does not dispute this fact.

On May 29, 1987, Busenius filed with the trial court a "Motion to . . . Clarify the Order Granting Summary Judgment". Following a hearing, the trial court issued an "Order Clarifying Summary Judgment Order" on July 21, 1987. This order provided, in effect, that Horan's failure to pay the entire contract balance by the date set forth in the summary judgment order had resulted in forfeiture of the contract. Horan immediately moved for reconsideration of this order, and it was denied.

On October 1, 1987, Horan filed a second appeal seeking review of the "Order Clarifying Summary Judgment Order"

and the "Order Denying Motion for Reconsideration." Subsequently, both appeals were consolidated.

## SUMMARY JUDGMENT

The primary issue on appeal is whether the trial court properly granted summary judgment on the ground that Horan's claim was barred by the statute of limitations. Horan contends that an issue of fact exists regarding when he discovered the facts constituting the alleged fraud and misrepresentation, thus precluding summary judgment. We agree.

■ On review of an order granting summary judgment, the appellate court must engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue of material fact exists, not to resolve any existing factual issue. *McConiga v. Riches*, 40 Wn. App. 532, 536, 700 P.2d 331 (1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 853, 751 P.2d 854 (1988). A material fact is one upon which the outcome of the litigation depends. *Wojcik*, 50 Wn. App. at 853. The court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party. *McConiga*, 40 Wn. App. at 536. An inference is a "'process of reasoning by which a fact or proposition sought to be established is deduced as a *logical consequence* from other facts, or a state of facts, already proved or admitted'." *Wojcik*, 50 Wn. App. at 853 (quoting *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986)). A summary judgment motion should be granted only where, from all of the evidence, reasonable persons could reach but one conclusion. *Wojcik*, 50 Wn. App. at 854.

■ Here, the parties agree that the statute of limitations for Horan's claim is 3 years, as provided in RCW 4.16.080(4). However, the parties disagree on what event

triggered the running of the statute. A fraud action accrues when the aggrieved party actually discovers, or in the exercise of due diligence could have discovered, the facts constituting the fraud. RCW 4.16.080(4); *Strong v. Clark,* 56 Wn.2d 230, 232, 352 P.2d 183 (1960). Mere suspicion of wrong is not discovery of the fraud. *Davison v. Hewitt,* 6 Wn.2d 131, 137, 106 P.2d 733 (1940). The discovery contemplated is of evidential facts leading to a belief in the fraud and by which the existence of the fraud may be established. *Davison,* 6 Wn.2d at 137. Notice that would lead a diligent party to further inquiry is notice of everything to which such inquiry would lead. *Sherbeck v. Estate of Lyman,* 15 Wn. App. 866, 870, 552 P.2d 1076 (1976).

The time at which Horan "discovered" the facts constituting the fraud, thus triggering the running of the statute of limitations, is a material fact. A genuine issue regarding this fact does exist. Although the December 3, 1981, letter from the King County Department of Planning and Community Development notified Horan of an alleged specific county code violation that had not been corrected, *i.e.,* "[t]he placement of a mobile home without the required permit(s) and inspections", such notification does not necessarily constitute discovery of the facts establishing a cause of action for fraud. Horan had previously been told that the mobile home was grandfathered in and that a permit was not necessary. He took this position with the County, and the County did not issue an order of abatement or take any other action until a year later. This delay in further action reasonably supported Horan's belief that the County had accepted his argument and was not planning to pursue the matter. Furthermore, even if Horan had made further inquiry into the alleged violations, it is questionable whether such inquiry would have resulted in the discovery of facts by which the existence of the fraud could be established. According to a letter from the department, no records are kept on nonconforming businesses or uses. The holding in *Strong,* 56 Wn.2d at 232, indicates that in

statute of limitation cases, public records relating to interests in real property give constructive notice to all persons of the recorded facts. We reject the urging by Busenius that we reach the same result in a case where no such public records exist.

Although notice that would lead a party to inquire further is notice of everything to which such an inquiry would lead, neither in the briefs nor in argument did Horan present any basis on which we could find that inquiry in December of 1981 would have disclosed his causes of action. A reasonable person could find that the earliest date on which Horan could have discovered his cause of action for fraud was October 14, 1983, the date on which the abatement order was upheld by the county hearing examiner. Horan filed his action in December 1985, which was well within the 3–year statute of limitations. After considering all of the evidence and reasonable inferences therefrom in the light most favorable to Horan, reasonable persons could reach more than one conclusion as to when Horan discovered or should have discovered facts constituting a cause of action for fraud. Therefore, the order granting summary judgment of forfeiture and the "Order Clarifying Summary Judgment Order" are reversed.

GROSSE, A.C.J., and SWANSON, J., concur.

Reconsideration denied April 12, 1989.